IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| ELBERT MULDROW, #1763475 | § | |
|---|---|---|
| VS. | § | CIVIL ACTION NO. 6:12cv460 |
| JEFFREY BERTHOT, ET AL | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Elbert Muldrow, proceeding *pro se* and *in forma pauperis*, a prisoner confined in the Texas prison system, filed this civil rights lawsuit under 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

I.  FACTS

Plaintiff filed his original complaint on July 20, 2012. In it, he alleges that while he was incarcerated in the Bradshaw State Jail, under the Texas Department of Criminal Justice ("TDCJ"), he subjected to deliberate indifference to his medical needs.

On September 6, 2012, the Court conducted an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id*. at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Lorie Parker, Warden William Motal and Nurse Steve Fields testified under

oath about prison policies and information contained in the Plaintiff's prison records. By and large, Plaintiff's testimony restated and explained certain portions of his complaint, which the Court summarizes below.

Plaintiff alleges in his complaint that on or about February 16, 2012, about the time he arrived at the Bradshaw State Jail, he was seen by a medical provider named Jeffrey Berthot, who Plaintiff claims identified himself as a "doctor." However, later testimony during the *Spears* hearing and the medical record reveals that Mr. Berthot is a Physician's Assistant, which Plaintiff does not dispute. At that time, Plaintiff complained to Mr. Berthot about a hernia and back problems. In the complaint and, initially, during the *Spears* hearing, Plaintiff asserted that Mr. Berthot told him he could do nothing about it. When Plaintiff asked him what he meant, Mr. Berthot became verbally abusive and Plaintiff left to avoid a confrontation. He further contends that the next time he saw Mr. Berthot, he refused Plaintiff medication for Plaintiff's back pains, hernia and his then-current cold or flu. Plaintiff contends in his complaint that, since then, his hernia has "dropped even worse" and his back and neck pain has increased, causing his legs to give out. As a result, he claims, he has gone into a "mantic depression," apparently meaning a "manic depression," and his blood pressure has gone up, causing him to pass out. He is suing Jeffrey Berthot; the University of Texas Medical Branch ("UTMB"); and the Bradshaw State Jail. He seeks damages in the amount of $450,000.00 for "pain and suffering" and "mental distress."

However, during the *Spears* hearing, Plaintiff stated that he had seen Ms. Killigrew after a Step 2 grievance and was given a lay-in to see Dr. Gray, who is now treating him. Dr. Gray prescribed Naproxen for Plaintiff's pain, which has decreased and also reduced his swelling, though he still has some pain. He is also receiving medication for his blood pressure. He stated that he is

"doing pretty good now." He did not know what kind of hernia he has, and said that the jail facilities he had been in before arriving at Bradshaw State Jail had given him "light treatment" and said that TDCJ would give him further treatment.

He stated he had been given a bottom bunk pass. He explained that his hernia is manifested as a knot on the right side of his penis and is swollen down to his groin. He has a sharp pain from it when he sits up. He stated he is now 49 years old. He does not know how long the hernia has existed. He explained that he had back surgery in 2004, but does not know what caused his back problem other than "some kind of strain over the years." He has no current work assignment but is taking courses. His maximum release date is October 4, 2012.

Nurse Fields testified that Plaintiff's medical records showed that on February 22, 2012, a physical revealed his back problems and he was prescribed Motrin, an NSAID-type anti-inflammatory pain reliever. His hernia was diagnosed on March 9, 2012, and he was referred to the UTMB Hospital in Galveston. However, UTMB denied surgery because it was an elective procedure. Nurse Fields explained that the surgery was elective because a hernia is reducible. A 2-3 centimeter hernia can be pushed back inside the body. He testified that pressure reduction is not permanent and the hernia will drop back out unless it is kept pushed in. He further testified that hernia surgery becomes necessary depending on how far the hernia would drop into the scrotal sac and blood supply is cut off. Additionally, Nurse Fields testified that Plaintiff was on Motrin until June 2012 when Dr. Gray put him on Naproxen, another NSAID-type anti-inflammatory pain reliever. The medical records did not reveal the exact nature of Plaintiff's back problems, only that he had surgery twice before entering prison.

Plaintiff interjected that he first told Mr. Berthot about his disability claim[1] and that Mr. Berthot just put him on Ibuprofen[2] for 30 days and would not renew the prescription. He testified he had more Ibuprofen when he had a tooth pulled, but no more after that ran out. He further testified that prior to entering prison, he had a prescription for Lortab, a narcotic, which he could not have in prison.

Nurse Fields resumed his testimony and affirmed that Mr. Berthot is a Physician's Assistant. He stated that the medical record reflects that Mr. Berthot prescribed Motrin for 30 days with two refills; the date of the prescription was February 22, 2012, the date of Plaintiff's intake physical. Therefore, Nurse Fields testified, Plaintiff should have had Motrin for 90 days until about May 22, 2012. He further testified that the record shows that Dr. Gray renewed the Motrin prescription with two refills on May 30, 2012.

On the Court's inquiry, Warden Motal testified that he had nothing to add.

Regional Grievance Coordinator Parker testified that Plaintiff was screened in on February 16, 2012, and wrote a grievance on March 26, 2012, which she asserted was too late under the TDCJ prison grievance procedures, meaning that Plaintiff's claim was unexhausted. However, that is not conclusive; Plaintiff testified that he had received nothing back on his first grievance and then submitted another Step 1 grievance and had a copy of a Step 2 with him.[3] He then restated that he

---

[1] Apparently, a reference to an application for Social Security disability benefits.

[2] Ibuprofen is the generic name for Motrin. *See* PDRhealth (Physicians' Desk Reference) website entry for Motrin, available at http://www.pdrhealth.com/drugs/motrin (visited September 10, 2012).

[3] As will be seen in the analysis below, it is unnecessary to determine whether Plaintiff's grievances were submitted properly and timely. Further, the Court is mindful that "failure to exhaust is an affirmative defense under the PLRA, and [ ] inmates are not required to specifically

had only received a 30 day supply of Motrin originally and that he saw Mr. Berthot again in the March 2012 time frame. He stated that he was not out of Motrin long before he received more from the dentist who pulled his tooth. Then, he testified, he was under Dr. Gray's care, who prescribed Naproxen for him. Nurse Fields again stated the timeline of Plaintiff's visits to medical, including his first visit with Dr. Gray on May 19, 2012, and the prescription for Naproxen and Claritin.

Plaintiff did not understand that UTMB had turned down his hernia surgery; he testified that he only knew that Mr. Berthot told him he would not have surgery and would not write a prescription for medication to treat his cold or flu. However, he admitted that a nurse had given him medication for such treatment. He also complained (and stated that he wrote a grievance) because Mr. Berthot would not give him a mattress pad for his back because he said "we don't issue those"; he just prescribed Motrin and gave Plaintiff a bottom bunk pass. Nurse Fields affirmed that a nurse had given Plaintiff Chlor-Trimeton, which he said is also known as "cold busters," with three treatments a day for seven days. He also said that Plaintiff had been authorized two refills of Motrin by Mr. Berthot and that he would have been given Motrin by the dentist after the tooth-pull, but that it was not issued because he still had Motrin from his original prescription. Plaintiff disputed the source of the Motrin.

Regional Grievance Coordinator Parker submitted Plaintiff's Medical and Grievance Records for review. Plaintiff assented to the Court's review of them in association with this action.

---

plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). Even though the Fifth Circuit subsequently ruled that a complaint is still subject to dismissal for failure to state a claim where the prisoner's failure to exhaust appears on the face of the complaint, *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007), it is not clear in this case that such a failure actually appears on the "face of the complaint." Therefore, exhaustion does not form the basis of the decision herein.

## II. DISCUSSION AND ANALYSIS

Pursuant to 28 U.S.C. § 1915A, the Court must review Plaintiff's complaint and dismiss it, or any portion of it, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a Defendant who is immune from such relief. A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The term "frivolous" embraces not only the inarguable legal conclusion, but also the fanciful factual allegation. *Neitzke*, 490 U.S. at 325. A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist. *Harris v. Gehmann*, 198 F.3d 153, 156 (5th Cir. 1999) (per curiam). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib*, 138 F.3d at 213.

To state a constitutional claim for relief under § 1983, a plaintiff must allege a right secured by the Constitution or the laws of the United States and a violation of that right by one or more state actors. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). To be a state actor subject to liability under Section 1983, the defendant must act "under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia." 42 U.S.C. § 1983. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61

S. Ct. 1031, 85 L. Ed. 1368 (1941)). The Supreme Court has formulated a two-part approach to the issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). In addition, "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lemons v. Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

Plaintiff does not state the precise basis for his complaint, but claims that he received "no medical treatment for my hernia and back, neck problems" that he was "trying to get proper medical attention" and that he feared for his life "due to negligence" and for "medical attention for my hernia problem." *See* Complaint at PageID #5. His testimony during the *Spears* hearing comports with his written claims in that regard. Therefore, Plaintiff's complaint is best characterized as one for deliberate indifference to his medical needs. "'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment,' and this includes 'indifference . . . manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" *Erickson v. Pardus*, 551 U.S. 89, 90, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S.

7

97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). "It is not, however, every injury . . . that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id*.; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence on the part of prison officials is not enough. *Id*. at 835. The deliberate indifference standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentional oversights. *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997).

In this light, deliberate indifference is "an extremely high standard to meet," and requires a showing that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001). "An incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Id*. (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Additionally, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino*, 239 F.3d at 756 (citing *Estelle*, 429 U.S. at 107). Furthermore, "the 'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Domino*, 239 F.3d at 756 (citing *Farmer*, 511 U.S. at 838). Neither an

8

incorrect diagnosis nor mere negligence nor even medical malpractice rises to the level of a constitutional violation. *Id.*; *see also Neely v. Khurana*, 2009 WL 1605649, at *8 (N.D. Tex. June 5, 2009).

It is clear that Plaintiff's allegations and testimony do not meet the standard for a finding of deliberate indifference to his medical needs. Although he complains that Mr. Berthot told him he could do nothing about his medical problems, that turns out not to be the case. Physician's Assistant Berthot did write Plaintiff a prescription for the NSAID anti-inflammatory medication Motrin in a 30-day supply with two refills initially; gave him a lower bunk pass consistent with his back and hernia problems; and referred him to UTMB at Galveston for review of his hernia problems. Although Plaintiff complains he never received more Motrin after his initial 30-day supply, he also testified that he did receive Motrin from the dentist. Nurse Fields testified that the Motrin the dentist would have given him was unnecessary because of the existing refills of Motrin from Mr. Berthot's initial prescription. Plaintiff may dispute the source of the Motrin if he wishes, but it is indisputable under his own testimony that he did receive the pain medication. He also complains he was not given a mattress pad on his request to Mr. Berthot. However, Mr. Berthot had none to give because the prison did not issue those. That is not an issue of indifference on Mr. Berthot's part. Similarly, the fact that UTMB, not Mr. Berthot, declined to perform hernia surgery because it was an elective procedure under the facts of Plaintiff's condition does not reflect indifference on Mr. Berthot's part. In fact, Mr. Berthot wrote the following entry in Plaintiff's medical record on March 19, 2012:

> Healthy male. No acute distress. Inguinal hernia protrudes approximately 2.0 cm but does not extend into the scrotum even though he as radiating pain there. Hernia is not strangulated. A referral was made to [hospital at Galveston] on [March 8, 2012] and on [March 12, 2012] his request was denied due to the fact that [the hospital] is not doing elective procedures at this time.

*See* entry dated March 19, 2012 (not Bates numbered). The same entry, by Mr. Berthot, reflected that he had prescribed Ibuprofen at 800 mg tablet strength to be taken twice daily for 30 days, keep on person, with two refills. *Id*. There is no basis for a deliberate indifference claim. Further, Plaintiff testified that he eventually received an updated prescription for Naproxen, a different NSAID-type pain medication, from Dr. Gray, which is also reflected in the medical record.

      Plaintiff's claim against UTMB is not clear as he has not made any specific allegations regarding that organization. In the "Parties to the Suit" section of his complaint, he simply refers to "U.T.M.B. Health/Medical Provider/Bradshaw State Jail" and describes the act or omission of which he complains as "U.T.M.B. was negligence towards my life threnting condition." *See* Complaint at PageID #3 (Section IV. of the Complaint) (as in original). To the extent he is suing UTMB itself, UTMB is an agency or department of the state of Texas and is therefore immune to suit by the Eleventh Amendment. *See Lewis v. Unitversity of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (per curiam). In the additional Statement of Claim, Part 2 that he added to the form complaint, he refers to having "problems with UTMB Health window staff Ms. Phillips," Complaint at PageID #5, but he has made no other allegations and has not named that individual as a Defendant in his lawsuit. Therefore, he literally has not stated a claim upon which relief may be granted toward UTMB.

      Plaintiff has also named the Bradshaw State Jail itself as a Defendant. Again, he has not made any particular allegations about the Bradshaw State Jail except in his "Parties to the Suit" allegation that "The warden of Bradshaw would not respond to any of my I-60s or grievances." Complaint at PageID #3. However, "a prisoner does not have a constitutional right to a grievance procedure at all, and he has no due process liberty interest in having his grievances resolved to his

satisfaction." *See Smith v. Cooper*, 2011 WL 3115850, at *2 (W.D. La. June 15, 2011) (citing *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005); *Staples v. Keffer*, 419 Fed. Appx. 461, 463 (5th Cir. 2011)). To the extent that the complaint can be read to suggest otherwise, in order to state a claim against the Bradshaw State Jail, a facility operated by a private corporation, plaintiff must show that the actions of jail officials resulted from an official policy or practice. *See Hamilton v. Hutchins State Jail*, 2008 WL 3930984, at *2 (N.D. Tex. Aug. 23, 2008) (citing, *inter alia*, *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978) and *Travis v. Texas Dept. of Criminal Justice*, 2006 WL 3831221 at *2 (N. D. Tex. Dec. 28, 2006)). This may include persistent or widespread practices which, although not officially authorized, are "so common and well settled as to constitute a custom that fairly represents [official] policy." *Id.* (quoting *Travis*, 2006 WL 3831221 at *2, and *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)). However, isolated incidents are insufficient to show a custom or practice for purposes of section 1983 liability. *See id*. In this case, Plaintiff has not alleged or testified to any such policy or practice with regard to either redress of grievances or deliberate indifference.

For the reasons stated herein, Plaintiff's complaint does not state a claim upon which relief may be granted. The complaint will therefore be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

It is accordingly

**ORDERED** that Plaintiff's complaint is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted and as frivolous pursuant to 28 U.S.C. § 1915A(b)(1). It is further

**ORDERED** that all motions not previously ruled on are hereby **DENIED**. It is further

**ORDERED** that the Clerk deliver a copy of this Memorandum Opinion and Order of Dismissal to the Three Strikes Coordinator for the Eastern District of Texas.

So **ORDERED** and **SIGNED** this **11** day of **September, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE